## STATE OF OREGON, *Respondent,*
### *v.*
## GEORGE MARVIN TOTH, *Appellant.*
## (No. C 76-06-07697, CA 7442)

566 P2d 1218

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Lee, Judges.

THORNTON, J.

## THORNTON, J.

Defendant appeals his conviction for theft in the first degree, ORS 164.055, assigning as error the denial of his motion to dismiss for lack of speedy trial and the denial of a motion for new trial based on newly discovered evidence.

Defendant was convicted for burning his own automobile in order to collect the insurance proceeds. The last act alleged in the indictment occurred January 27, 1976, and the indictment is dated June 4, 1976, a preindictment delay of just over four months. Defendant was tried and convicted September 28, 1976.

At the hearing on the motion for lack of speedy trial, the parties stipulated that "the matter wasn't discovered and finalized until some time in March."

Unlike a Sixth Amendment postindictment speedy trial motion, in order to prevail on a Fifth Amendment preindictment speedy trial motion, the accused has the burden of proving that the right to due process was prejudiced by preindictment delay and that the delay "violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions.' " *United States v. Lovasco,* 431 US 783, 790, 97 S Ct 2044, 52 L Ed 2d 752 (1977).

At the hearing on the speedy trial motion, defendant established that two persons, a John Cozad and his son John Pruitt, had been with him on the date of the automobile burning and were no longer available. No evidence was presented tending to show that, had they been available, their testimony would exculpate defendant. Defendant did not contend that the state caused the delay intentionally. Assuming that the mere absence of potentially beneficial witnesses establishes prejudice for purposes of a speedy trial motion, we conclude that the delay in this case did not violate fundamental conceptions of justice. *United States v. Lovasco, supra.*

At trial there was testimony that defendant in-

tended to burn his automobile in order to collect insurance proceeds and had solicited aid toward that end. However, the only testimony directly implicating defendant in the burning of the car was offered by Charlene Angus, who lived with John Pruitt at the time the burning occurred. The burning occurred outside the Cozad residence and Ms. Angus testified that defendant, John Cozad and John Pruitt left the Cozad residence prior to the burning and were outside the residence "about ten or fifteen minutes, and then they all came back inside. They went in the living room and sat down and watched television." She further testified that the three men were unusually quiet and after a short interval Pruitt "got up and went in the kitchen to get a drink of water, and looked out the window, and said * * * [defendant's] car was on fire." She also testified that on the day after the fire she "asked * * * [defendant] if he had * * * [Pruitt] set the car on fire" and that defendant had admitted doing so.

Defendant's motion for a new trial was based on an affidavit by defense counsel's trial assistant that subsequent to trial,

"* * * on the 25th day of October, 1976, I did make contact with a person identifying himself as John Cozad;

"That on October 25, 1976 John Cozad told me that the defendant in the above-entitled case was at the Cozad residence the day the defendant's automobile burned up, that he [Cozad] heard the defendant state that he was going to burn his auto and also heard the defendant ask his [Cozad's] son John Pruitt to help him burn the auto, that he [Cozad], Pruitt, and the defendant were in Cozad's house watching television and that no one left the room, until John Pruitt noticed the auto was on fire, that there was no way that the defendant or John Pruitt could have started the fire, that if possible he [Cozad] would return to Oregon to testify to the above-stated facts;

"That on October 25, 1976 I also spoke with a person identifying himself as John Pruitt, living with his father John Cozad in Council Bluff, Iowa;

"That on October 25, 1976 John Pruitt told me that he and his wife Charlene Angus had a fight and that the reason Charlene Angus would testify against the defendant in the above-entitled case would be to get revenge on him [Pruitt] and to somehow try to implicate him [Pruitt] in the above-entitled case, that the defendant in the above-entitled case did ask him [Pruitt] to help him burn the car, but that he [Pruitt] refused, that the defendant did not bring the subject up again after the refusal, that he [Pruitt], the defendant and Cozad were watching television with no one leaving the room, that upon getting up to get a glass of water he [Pruitt] noticed by looking out the window that the defendant's car was on fire, that there was no way that the defendant could have started the fire, that he [Pruitt] had seen loose electrical wires in the interior of the car and had smelled a heavy odor of gasoline coming from the car, that he [Pruitt] believes the fire may have resulted from the combination of the wires and the gas, that he [Pruitt] would return to testify to the above-stated facts if a new trial is granted * * *." (Brackets theirs.)

■ Motions for a new trial based on newly discovered evidence are addressed to the discretion of the trial court and are not favored. *State v. Clayton,* 11 Or App 534, 504 P2d 139 (1972). The standard for determining whether a new trial is warranted is ORS 17.610 as interpreted in *State v. Davis,* 192 Or 575, 579, 235 P2d 761 (1951):

"Newly discovered evidence which will justify a court in granting a new trial must meet the following requirements:

" '(1) It must be such as will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it must be such as, with due diligence, could not have been discovered before the trial; (4) it must be material to the issue; (5) it must not be merely cumulative; (6) it must not be merely impeaching or contradicting of former evidence. * * *' [citing authority]."

In *State v. Williams,* 2 Or App 367, 468 P2d 909 (1970), we held that in applying the *Davis* standard, the first three requirements are crucial and that the

last three requirements should only be considered part of requirement (1).

■ The state does not argue that the defense lacked diligence in attempting to locate Cozad and Pruitt prior to trial. The record amply demonstrates a continuing effort by defendant to locate these witnesses. Rather, the state contends that the prospective testimony is merely cumulative with respect to defendant's expressed desire to destroy his car and his whereabouts at the time the fire was discovered. However, we cannot ignore the fact that both witnesses aver that "no one left the room," and that "there was no way that the defendant could have started the fire."

Defendant's conviction in this case is based predominantly on the testimony of a single witness. We agree with the defendant that if the newly discovered evidence is believed by a jury, the same "will probably change the result." *State v. Davis, supra.*

Reversed and remanded for a new trial.

**LEE, J.,** dissenting.

I dissent based upon my belief that even were the testimony of the additional witnesses made available, in light of the nature of that testimony taken as a whole, it is highly unlikely that a new trial would produce a different result.